**MORGAN, LEWIS & BOCKIUS LLP**
(A Pennsylvania Limited Liability Partnership)
Ann Marie Effingham (209642016)
502 Carnegie Center
Princeton, NJ 08540-7814
Email: annmarie.effingham@morganlewis.com
Phone: (609) 919-6600

Benjamin K. Jacobs (admitted *pro hac vice*)
Jeffrey Becker (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Email: benjamin.jacobs@morganlewis.com
        jeffrey.becker@morganlewis.com
Phone: (215) 963-5651
        (215) 963-5946

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COLEMAN MCMILLAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>　　　v.<br><br>PEPPERIDGE FARM, INCORPORATED, ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities) and JOHN DOES 1-5 (fictitious names of unidentified individuals)<br><br>Defendant. | Civil Action No.: 2:22-CV-00542<br><br><br><br>Document Electronically Filed |

## DEFENDANT PEPPERIDGE FARM, INCORPORATED'S ANSWER, SEPARATE DEFENSES, AND COUNTERCLAIM TO PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant Pepperidge Farm, Incorporated ("Pepperidge Farm"), by and through its

attorneys, hereby submits its Answer, Separate Defenses, and Counterclaim to the Class Action

Complaint of Plaintiff Coleman McMillan ("Plaintiff") in accordance with the numbered paragraphs thereof as follows:

## CLASS ACTION COMPLAINT & DEMAND FOR TRIAL BY JURY[1]

Plaintiff Coleman McMillan ("Plaintiff") and all others similarly situated deliver food products to retail stores and other end users on behalf of Defendant Pepperidge Farm, Incorporated ("Defendant" or "Pepperidge Farm") pursuant to form contracts like those attached as Exhibit A (Plaintiff's Consignment Agreement). In this class action lawsuit arising from Defendant Pepperidge Farm's misclassification of its delivery drivers for sales territories in the State of New Jersey as "independent contractors," Plaintiff alleges that Defendant Pepperidge Farm has subjected them to improper pay deductions in violation of the alleging violations of the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. §§ 34:11-4.1, et seq., and, as such, Defendant Pepperidge Farm has been unjustly enriched under New Jersey common law. Plaintiff, on behalf of himself and all others similarly situated, seek all damages available under these claims.

**ANSWER**:  Pepperidge Farm admits that Plaintiff purports to assert claims under the identified state statute and common law on behalf of himself and on behalf of those persons he alleges to be similarly situated.  Pepperidge Farm denies the remaining allegations in this unnumbered paragraph.

## PARTIES

1.      Plaintiff Coleman McMillan resides in 512 Clove Rd., Staten Island NY 10310. He has been a Pepperidge Farm distributor with a territory in New Jersey since October 5, 2018.

---

[1]      For the Court's convenience, Pepperidge Farm incorporates and restates herein the headings and allegations in Plaintiff's Complaint.  Pepperidge Farm does not admit the substance of any of those headings.

**ANSWER**:  Pepperidge Farm admits that, on information and belief, Plaintiff resides at 512 Clove Rd., Staten Island NY 10310, and that Plaintiff is the President of a company called Nobody Owns Me, LLC ("Nobody Owns Me") that has been a party to commercial agreements with Pepperidge Farm since approximately October 2018.  Pepperidge Farm denies the remaining allegations in Paragraph 1.

2.     Defendant Pepperidge Farm is a Connecticut corporation with its principal place of business at 595 Westport Ave., Norwalk Connecticut 06851. Defendant Pepperidge Farm misclassifies its employees, who deliver and stock baked food products from its New Jersey distribution centers, as independent contractors. Defendant Pepperidge Farm is and was, at all relevant times, an employer under New Jersey law.

**ANSWER**:  Pepperidge Farm admits that it is a Connecticut corporation with a principal place of business at 595 Westport Ave., Norwalk Connecticut 06851.  Pepperidge Farm denies that it ever misclassified any employee as an independent contractor.  Pepperidge Farm admits that it employs individuals in New Jersey but denies that it employed Plaintiff and/or any putative class member(s).  Pepperidge Farm denies any remaining allegations in Paragraph 2.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over Pepperidge Farm because it is an employer under New Jersey law. Upon information and belief, Pepperidge Farm has employed hundreds of Distributors in New Jersey during the Class Period. https://www.pfroutes.com/en-US/search?facetstate=nj (last visited November 30, 2021).

**ANSWER**:  Pepperidge Farm admits that this Court has jurisdiction over this matter. Pepperidge Farm further admits that it employs individuals in New Jersey but denies that it

employed Plaintiff and/or any putative class member(s).  Pepperidge Farm denies the remaining allegations in Paragraph 3.

4.      Venue is proper pursuant to Rule 4:3-2(b) because Plaintiffs claims arose, in part, in Passaic County, New Jersey and Pepperidge Farm directed business into Passaic County, New Jersey. At all relevant times, Plaintiff worked for Pepperidge Farm in Passaic County, New Jersey. Ex. A at Schedule A ("Description of Territory").

**ANSWER**:  Pepperidge Farm admits that venue is proper in the District of New Jersey. Pepperidge Farm denies the remaining allegations in Paragraph 4.

## FACTS

5.      Pepperidge Farm maintains a network of Distributors in New Jersey to distribute its biscuit and snack products throughout the State of New Jersey.

**ANSWER**:  Pepperidge Farm admits that its bakery and biscuit products are distributed throughout the State of New Jersey and that it contracts with independent distributors and distribution companies to provide distribution services in the State of New Jersey.  Pepperidge Farm denies the remaining allegations in Paragraph 5.

6.      Pepperidge Farm sells its products to various retail stores such as grocery stores, mass merchandisers, and convenience stores and relies on its Distributors to deliver its products to market. Distributors deliver, stock, merchandise, promote, and remove Pepperidge Farm products for stores in defined territories.

**ANSWER**:  Pepperidge Farm admits only that it manufactures and markets bakery and biscuit products that are sold by grocery stores, mass merchandisers, and convenience stores, among other vendors, and that there are independent distributors and distribution companies that

are parties to commercial agreements with Pepperidge Farm that set forth their respective obligations. Pepperidge Farm denies the remaining allegations in Paragraph 6.

7.      Plaintiffs and Class Members performed delivery, stocking, merchandising, promotional, and removal services on behalf of Pepperidge Farm in New Jersey.

**ANSWER**:  Pepperidge Farm admits that Plaintiff and putative class members have been parties to commercial agreements with Pepperidge Farm that set forth their respective obligations. Pepperidge Farm denies the remaining allegations in Paragraph 7.

8.      Upon information and belief, Pepperidge Farm has employed hundreds of Distributors in New Jersey during the Class Period. https://www.pfroutes.com/en-US/search?facetstate=n i (last visited November 30, 2021).

**ANSWER**:  Denied.

9.      In order to perform work for Pepperidge Farm, Plaintiff and similarly situated Distributors signed a Pepperidge Farm "Consignment Agreement" (hereinafter "Agreement"), which detailed the terms of Distributors' work for Defendant and labels Distributors as "independent businessm[e]n." A copy of Plaintiffs Agreement is attached to this Complaint as Exhibit A and is, upon information and belief, substantially similar in substance to the Agreements signed by the putative Class Members that Plaintiff seeks to represent. While Distributors pay for the opportunity to enter into these Agreements and to secure an assigned distribution territory, Pepperidge Farm's right to control, and extensive actual control, over Plaintiff and Class Members is such that the Distributors are actually employees under New Jersey law.

**ANSWER**:  Pepperidge Farm admits Nobody Owns Me has been a party to commercial agreements with Pepperidge Farm that set forth its obligations and that Plaintiff purports to

represent putative class members who or that are parties to commercial agreements with Pepperidge Farm.  Pepperidge Farm denies the remaining allegations in Paragraph 9.

10.     Pepperidge Farm retained the right to terminate Distributors' contracts at any time without cause. The Agreement states, "[Defendant] shall have the right in its discretion to terminate this Agreement at any time, upon written notice to the Consignee, for" Exh. A at ¶ 23.

**ANSWER**:  Pepperidge Farm admits that Nobody Owns Me has been party to commercial agreements with Pepperidge Farm and that those documents speak for themselves. Pepperidge Farm denies the remaining allegations in Paragraph 10.

11.     In addition, Pepperidge Farm also retained the right to terminate Distributors' contracts at its discretion for cause. Exh. A at ¶ 19. Defendant's "for cause" grounds for termination, as stated in Distributors' Agreements, reserved the right for Defendant to exercise extensive control over the details of Distributors' work. Defendant retained the right to terminate Distributors' contracts for "failure of [Distributor] to realize the sales potential of the Territory and [Distributor's] failure to make satisfactory improvement within thirty days after notice of inadequacy. . . ." Exh. A at 1119(a). In order to use their best efforts to fully realize the sales potential of their routes, Distributors were required by the terms of the Agreement to:

    a.    "actively solicit all retail stores in the Territory whose accounts can by [sic] profitably handled;"

    b.    "maintain at all times an adequate and fresh supply of Consigned Products in all such retail stores;"

    c.    "provide distribution service to all such retail stores on such days of the week (including weekends), at such intervals and with such frequency as

is necessary to realize the full sales potential thereof and to maintain an

adequate fresh supply of Consigned Products therein;"

d.      "make available to all such retail stores all varieties of authorized

Consigned Products unless it is demonstrably unprofitable to do so;"

e.      "cooperate with [Defendant] in the effective utilization of [Defendant's]

advertising, sales promotion, and space merchandising programs and;"

f.      "keep fully informed of [Defendant's] recommended policies and method

for increasing sales and improving distribution service." Exh. A at 14.

**<u>ANSWER</u>**:  Pepperidge Farm admits that Nobody Owns Me has been party to

commercial agreements with Pepperidge Farm and that those documents speak for themselves.

Pepperidge Farm denies the remaining allegations in Paragraph 11 and/or its subparts a-f.

12.      Distributors' contracts could also be terminated for cause for the following

reasons, which gave Pepperidge Farm great latitude in determining how Distributors carried out

their duties:

a.      the "failure of [Distributor] adequately to realize the sales potential of the

Territory and [Distributor's] failure to make satisfactory improvement

within thirty days after notice of inadequacy from [Defendant]" Exh. A

¶19(a);

b.      the "failure of [Distributor] to maintain the general appearance and

condition of its truck(s) or other equipment, the general appearance or

deportment or that of its officers, directors, employees, agents,

representatives, or helpers, in accordance with standards in keeping with

the established reputation of [Defendant] and the high quality of its

products and the continuance of such failure for more than five days after written notice thereof from [Defendant]" Exh. A ¶19(c); or

c.    "any actions, activities or practices of [Distributor or agents] which either do, or in the opinion of [Defendant] are likely to, materially damage the reputation of [Defendant] and/or [Defendant's] relations or reputation with consumers, retail stores, or any other purchaser of Consigned Products." Exh. A ¶19(f).

**ANSWER**:  Pepperidge Farm admits that Nobody Owns Me has been party to commercial agreements with Pepperidge Farm and that those documents speak for themselves. Pepperidge Farm denies the remaining allegations in Paragraph 12 and/or its subparts a-c.

13.    Defendant Pepperidge Farm employed sales managers who supervised Distributors' work, including that of Plaintiff. Through its sales managers and other agents, Defendant conducted regular evaluations of Distributors' sales and store performance. If a Distributor's performance was deemed inadequate, Defendant retained the right to send the Distributor a letter requiring that he or she remedy performance within five days, or Defendant could make other arrangements to service the store and could even terminate the Distributor's contract. Exh. A at ¶ 7.

**ANSWER**:  Pepperidge Farm admits that Nobody Owns Me has been party to commercial agreements with Pepperidge Farm and that those documents speak for themselves. Pepperidge Farm denies the remaining allegations in Paragraph 13.

14.    Pepperidge Farm retained the right to "establish reasonable sales and/or distribution goals for [Distributor] and this Distributorship" and required that Distributors "shall either meet or exceed such goals." Exh. A at ¶ 4 (emphasis added). Defendant's sales managers

8

often set such goals for Distributors throughout the year. Under the terms of Defendant's

Agreement, failure to meet or exceed Defendant's sales or distribution goals was "for cause"

grounds for termination of a Distributor's contract. See Exh. A at ¶¶ 19(a), (b), (d).

**ANSWER**:  Pepperidge Farm admits that Nobody Owns Me has been party to

commercial agreements with Pepperidge Farm and that those documents speak for themselves.

Pepperidge Farm denies the remaining allegations in Paragraph 14.

15.    Pepperidge Farm retained the right to exercise control over the manner and means

of accomplishing the delivery of its products to market through its Distributors. Defendant

requires Plaintiffs and other members of the Class to perform their duties under the policies,

procedures, pricing and promotions set by Defendant Pepperidge Farm. Defendant provided

Distributors with schematics, or "plan-o-grams," which depicted precisely how its Distributors

should display the products that they delivered to stores. Pepperidge Farm, not Distributors,

determined the wholesale price of its product. Pepperidge Farm directed the number of times that

Distributors should visit their stores each week and monitored Distributors' activity through its

sales managers and its billing and ticketing systems. Pepperidge Farm retained the right to

require that Distributors attend quarterly sales meetings where sales managers informed

Distributors of Defendant's upcoming promotions and praised Distributors with the highest sales

numbers. Pepperidge Farm also negotiated the space for its products at the stores its Distributors

serviced. If stores did not wish to receive deliveries from Defendant's Distributors, Pepperidge

Farm retained the right to make other arrangements with the store for the delivery of its products.

See Exh. A at ¶ 8.

**ANSWER**:  Pepperidge Farm admits that Nobody Owns Me has been party to commercial agreements with Pepperidge Farm and that those documents speak for themselves. Pepperidge Farm denies the remaining allegations in Paragraph 15.

16.    Pepperidge Farm determined the days that its Distributors could pick up their product from the warehouse.

**ANSWER**:  Denied as stated.  By way of further response, Pepperidge Farm states that independent distributors, like Plaintiff, can set their own hours for visiting warehouses and can hire helpers or employees to visit the warehouses on behalf of independent distributors.

17.    Pepperidge Farm disciplines its Distributors and its policies and practices regarding such discipline, as set forth in its common Agreements, demonstrate control over its Distributors that an employer has over its employees. Exh. A at ¶ 7.

**ANSWER**:  Pepperidge Farm admits that Nobody Owns Me has been party to commercial agreements with Pepperidge Farm and that those documents speak for themselves. Pepperidge Farm denies the remaining allegations in Paragraph 17.

18.    Pepperidge Farm also required that its Distributors purchase and maintain a specialized handheld device, along with a printer, that transmitted detailed information about Distributors' deliveries, including when these deliveries occurred and to which stores. Pepperidge Farm charges its Distributors fees associated with weekly maintenance of its handheld device, among other charges for supplies.

**ANSWER**:  Pepperidge Farm admits that Nobody Owns Me and putative class members, as independent contractors, agreed to and did bear the expenses associated with the equipment needed for their respective businesses, and that such equipment included a handheld computer and printer.  Pepperidge Farm denies the remaining allegations in Paragraph 18.

19.     Defendant contacts Plaintiffs and the Class regularly via the handheld computer device called an "HHC", emails, regular mail, text message, and/or via phone calls regarding communications such as, without limitation, stores needing Defendant's products, placement of product in stores, and/or promotions of Defendant.

**ANSWER**:  Denied as stated.  By way of further response, Pepperidge Farm states that there is only one Plaintiff in this matter and no class has been certified in this case.  Pepperidge Farm further states that independent distributors may receive communications from Pepperidge Farm.  Those communications may include informing independent distributors of retailers' requests for service or product, retailers' requested product placement in their stores, and retailers' planned promotions.  The method of communication varies among independent distributors, which may depend in part on the independent distributor's preferred method of communication.

20.     Despite Defendant's extensive right of control over Distributors' work, Defendant has routinely classified Distributors as independent contractors.

**ANSWER**:  Pepperidge Farm admits that, at all relevant times, it has properly classified Plaintiff and putative class members as independent contractors.  Pepperidge Farm denies the remaining allegations in Paragraph 20.

21.     Even though Pepperidge Farm labeled "independent businessm[e]n," Distributors were not permitted to sell their Distributorships without "prior written approval of [Defendant]". Exh. A at ¶¶ 15, 18. Defendant required that any buyer of Plaintiffs' Distributorships meet Defendant's requirements as to "character, ability, financial responsibility, business acumen, and adequate facilities. . . ." Id. at ¶ 18. Defendant retained the right to interview prospective buyers and require that Plaintiffs' prospective buyers submit a business plan to Defendant, which

Defendant would have to approve in order for a sale to take place. Defendant retained "its Right of First Refusal" for any sale of all or any portion of the Distributorship. Id.

**ANSWER**:  Pepperidge Farm admits that Nobody Owns Me has been party to commercial agreements with Pepperidge Farm and that those documents speak for themselves. Pepperidge Farm denies the remaining allegations in Paragraph 21.

22.    Upon information and belief, Defendant misclassified Plaintiffs and similarly situated Distributors knowingly and wilfully.

**ANSWER**:  Denied.

23.    Pepperidge Farm has paid Plaintiff and Class Members under a common compensation plan and policy where Distributors were paid a sales commission based on the items sold.

**ANSWER**:  Pepperidge Farm admits that Nobody Owns Me has been party to commercial agreements with Pepperidge Farm and that those documents speak for themselves. Pepperidge Farm denies the remaining allegations in Paragraph 23.

24.    As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has failed to indemnify Plaintiffs and similarly situated Class Members for employment-related expenses, including the cost of providing appropriate vehicles and vehicle expenses such as fuel, maintenance, repair; the cost and maintenance of a handheld device and printer; the cost of warehousing Defendant's products; pallet fees that Defendant charged Plaintiff and similarly situated Class Members; expenses incurred as the result of stale products and/or inventory irregularities; and the cost of required business liability insurance.

**ANSWER**:  Denied.  By way of further response, Pepperidge Farm states that Plaintiff and putative class members, as independent contractors, agreed to and did bear the expenses associated with their respective businesses.

25.    As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has unlawfully collected and withheld earned wages through deducting, without limitation: pallet fees/assessments, the cost and maintenance of a handheld computer device(s) and printer(s), and charges incurred as the result of stale products and/or inventory irregularities.

**ANSWER**:  Denied.

26.    The policies related to any deductions from the wages of Plaintiff and the Class regarding stale products were set by Defendant only without any negotiation or participation by Defendant's Distributors.

**ANSWER**:  Pepperidge Farm admits that Plaintiff and putative class members, as independent contractors, agreed to and did bear the expenses associated with their respective businesses.  Pepperidge Farm denies the remaining allegations in Paragraph 26.

27.    As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has willfully and knowingly subjected Plaintiff and similarly situated Class Members to unlawful deductions and has failed to reimburse Plaintiff and other Class Members for the types of work-related expenses set forth above.

**ANSWER**:  Denied.

## CLASS ACTION ALLEGATIONS

28.    This action is brought by Plaintiff as a class action pursuant to Rule 4:32 and for all claims asserted herein, on behalf of themselves and the following, initially defined, New

Jersey Class: All persons or entities who have been employed by Defendant Pepperidge Farm as Distributors under its Agreements with territories in the State of New Jersey at any time within six years preceding the filing of this action (hereinafter "New Jersey Class" or "Class").

**ANSWER**:  Except to admit that Plaintiff purports to bring this action on behalf of the stated putative class of individuals, Pepperidge Farm denies the allegations in Paragraph 28, denies that class treatment is appropriate, and denies that Plaintiff or the putative class members he seeks to represent are entitled to any relief.

29.    Class action treatment of this action is appropriate because all of the class action requisites of Rule 4:32 are satisfied. In particular:

**ANSWER**:  Denied.

30.    Numerosity — R. 4:32-1(a)(1). Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, including discovery of Defendant Pepperidge Farm agreement records, the Class is so numerous that the joinder of all members is impracticable. See https://www.pfroutes.com/en-US/search?facetstate=nj (last visited November 30, 2021). The Class is comprised of an easily ascertainable set of persons or entities who performed worked for Defendant Pepperidge Farm as a Distributor in New Jersey within the past six years.

**ANSWER**:  Denied.

31.    Commonality — R. 4:32-1(a)(2); (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. Questions of law and fact are common to all class members, because, *inter alia*, this action concerns Defendant's common business policies, as described herein. These common questions of law and fact include, without limitation:

14

a.    Whether Defendant engaged in the conduct as alleged herein;

b.    Whether Plaintiffs and the Class Members were misclassified as "independent contractors" when they were actually employees;

c.    Whether Plaintiffs and the Class Members were deprived the protections of employee status under the law;

d.    Whether Defendants were unjustly enriched by their common business practices; and/or

e.    Whether Plaintiff and the Class Members are entitled to damages, and the amount of such damages.

**ANSWER**:  Pepperidge Farm denies the allegations in Paragraph 31 and its subparts a-e.

32.    Typicality —R 4:32-1(a)(3). Plaintiff's claims are typical of the claims of the Class Members in that Plaintiff, like all Class Members performed worked for Defendant Pepperidge Farm as a Distributor in New Jersey within the past six years.

**ANSWER**: Denied.

33.    Adequacy of Representation — R 4:32-1(a)(4). Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are experienced in consumer class-action litigation. Plaintiff has no interests which are adverse to, or in conflict with, other members of the Class.

**ANSWER**: Pepperidge Farm lacks sufficient knowledge or information to form a belief as to the truth of the allegations relating to Plaintiff's or Plaintiff's counsel's alleged adequacy to represent the putative class.  Pepperidge Farm denies the remaining allegations in Paragraph 33.

34.    Superiority of Class Action — R 4:32-1(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of

common questions of law and fact is superior to multiple individual actions or piecemeal

litigation. Moreover, absent a class action, most Class Members would likely find the cost of

litigating their claims prohibitively high and would therefore have no effective remedy at law.

> a.    The prosecution of separate actions by the individual Class Members
>
> would create a risk of inconsistent or varying adjudications with respect to
>
> individual Class Members, which would establish incompatible standards
>
> of conduct for Defendants. In contrast, a class action presents far fewer
>
> management difficulties, conserves judicial as well as the parties'
>
> resources, and protects the rights of each Class Member.

**ANSWER**:  Denied.

**COUNT ONE**

**VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAWS**

35.    All previous paragraphs are incorporated as though fully set forth herein.

**ANSWER**: Pepperidge Farm incorporates its responses above to the allegations

contained in Paragraphs 1-34 of the Complaint as if fully set forth herein.

36.    Plaintiff and the class members are employees entitled to the NJWPL's

protections.

**ANSWER**: Denied.

37.    Defendant is an employer required to pay Plaintiff and the class members in

accordance with the NJWPL.

**ANSWER**: Pepperidge Farm admits only that it is an employer generally but denies that

it employed Plaintiff and/or any putative class member(s).  Pepperidge Farm denies the

remaining allegations in Paragraph 37.

38.    The NJWPL generally provides that "[n]o employer may withhold or divert any portion of an employee's wages." See N.J.S.A. §§ 34:11-4.4. The types of wage withholdings/diversions described above in Paragraphs 24-25 are not exempted from this general prohibition.

**ANSWER**: The allegations in Paragraph 38 are conclusions of law to which no response is required.  To the extent a response is required, Pepperidge Farm denies those allegations.

39.    Defendant has violated the NJWPL by subjecting Plaintiff and other class members to the wage withholdings/diversions in violation of the NJWPL.

**ANSWER**: Denied.

40.    Defendant's unlawful deductions from Plaintiff and the New Jersey Class Members' wages denied/denies them compensation to which they were/are legally entitled to receive.

**ANSWER**: Denied.

## COUNT TWO

## UNJUST ENRICHMENT

41.    All previous paragraphs are incorporated as though fully set forth herein.

**ANSWER**: Pepperidge Farm incorporates its responses above to the allegations contained in Paragraphs 1-40 of the Complaint as if fully set forth herein.

42.    The New Jersey doctrine of unjust enrichment permits a plaintiff to recover from a defendant where (i) the defendant was enriched; (ii) at the expense of the plaintiff; and (iii) it would be against equity and good conscience to permit defendant to retain what plaintiff seeks to recover. Under such circumstances, a plaintiff must be compensated for the benefits unjustly received by the defendant.

**ANSWER**: The allegations in Paragraph 42 are conclusions of law to which no response is required.  To the extent a response is required, Pepperidge Farm denies those allegations.

43.     Under the unjust enrichment doctrine, Plaintiffs and all New Jersey Class members seek the recovery of monies retained by Defendant due to Pepperidge Farm's business practice of requiring Distributors to incur the types of operating expenses ordinarily incurred by employers. These operating expenses include, without limitation, pallet fees/assessments, gasoline expenses, vehicle expenses, vehicle insurance, liability insurance, the cost and maintenance of a handheld device(s) and printers(s), including cellular data fees for the handheld device(s). Defendant has avoided such expenses by misclassifying Plaintiffs and the Class Members as non-employee contractors even though Defendant both retains and exercises the right to control the most significant aspects of the Distributor position. Under such circumstances, it is inequitable for Defendant to retain the benefits of the misclassification.

**ANSWER**: Except to admit that Plaintiff purports to seek the relief described in Paragraph 43 for himself and on behalf of putative class members, Pepperidge Farm denies the allegations in Paragraph 43.

44.     Moreover, if the Court determines that any Plaintiff or group of class members is not in privity of contract with Defendant or that the pay deductions associated with the NJWPL claim are not governed by the contract, then such Plaintiff or group of class members will invoke the unjust enrichment doctrine to recover the value of the pay deductions that are the subject of the NJWPL claim. Under the circumstances alleged herein, it would be inequitable for Defendant to retain the benefits associated with such claims.

**ANSWER**: Except to admit that Plaintiff purports to seek the relief described in Paragraph 44 for himself and on behalf of putative class members, Pepperidge Farm denies the allegations in Paragraph 44.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing allegations, Plaintiff respectfully requests that the Court:

     a.    Certify the putative New Jersey Class;

     b.    Appoint Plaintiff McMillan the Class Representative of the New Jersey Class;

     c.    Enter judgment against Defendant and award the reimbursement to Plaintiff and the New Jersey Class of all improper pay deductions, fees, charges, and/or other out-of-pocket expenditures;

     d.    Order Defendant to pay all costs and fees, including attorneys' fees;

     e.    Order Defendant to pay liquidated damages pursuant to the New Jersey Wage Payment Law and/or the New Jersey Wage Theft Act during the class period;

     f.    Order Defendant to pay pre- and post-judgment interest;

     g.    Order all available declaratory and/or injunctive relief; and

     h.    Grant other such relief as the interests of justice may require.

**ANSWER**:  Pepperidge Farm denies that Plaintiff or the individuals he seeks to represent are entitled to any type of remedy, relief, or damages in this action, including any relief requested in Plaintiff's Prayer for Relief and/or its subparts a-h.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

**ANSWER**: Pepperidge Farm admits that Plaintiff purports to demand a trial by jury. Pepperidge Farm denies that Plaintiff is entitled to a trial by jury on any of his claims.

## GENERAL DENIAL

Pepperidge Farm denies each and every allegation in the Complaint that has not otherwise been specifically admitted herein.

## SEPARATE DEFENSES

Pepperidge Farm asserts the following defenses without conceding that Pepperidge Farm bears the burden of proof as to any of the following defenses.

1.      The Complaint fails, in whole or in part, to plead facts sufficient to state a claim upon which relief can be granted against Pepperidge Farm under the NJWPL, including but not limited to, because (a) Plaintiff is not an employee under the NJWPL, (b) Plaintiff does not allege that Pepperidge Farm failed to pay them wages that it contractually owed to them, (c) Plaintiff's business authorized in its agreement with Pepperidge Farm the complained-of deductions and agreed that it would be responsible for the expenses that they seek to recover; and/or (d) the NJWPL does not apply to unreimbursed business expenses.

2.      The Complaint fails, in whole or in part, to plead facts sufficient to state a claim upon which relief can be granted against Pepperidge Farm under an unjust enrichment theory because Plaintiff admits that his relationship with Pepperidge Farm is governed by a contractual agreement.

3.      The claims of Plaintiff and/or the claims of some or all of the putative class members are barred, in whole or in part, by the limitation periods applicable to their claims.

4.     The claims of Plaintiff and/or the claims of some or all of the putative class members are barred, in whole or in part, to the extent that such claims have been released, waived, discharged, and/or abandoned.  In particular, Plaintiff released any and all claims it had or may have had against Pepperidge Farm as of August 9, 2021 for valuable consideration in connection with the sale of certain distribution rights to Pepperidge Farm.  *See* Club Purchase Transaction Packet, attached here as Ex. B.

5.     The claims of Plaintiff and/or the claims of some or all of the putative class members are barred, in whole or in part, by the doctrines of laches, unclean hands, estoppel, and/or set-off.

6.     The claims of Plaintiff and/or the claims of some or all of the putative class members are barred, in whole or in part, by the doctrines of res judicata, collateral estoppel, judicial estoppel, and/or by any other applicable doctrine of preclusion or estoppel.

7.     The claims of Plaintiff and/or the claims of some or all of the putative class members are barred, in whole or in part, because they knowingly submitted to and acquiesced in the obligations and relationship set forth in their Consignment Agreements, from which they have received and accepted financial benefits.

8.     The claims of Plaintiff and/or the claims of some or all of the putative class members are barred, in whole or in part, because they have not sustained any injury or damage by reason of any act or omission of Pepperidge Farm.

9.     Even if Plaintiff or any putative class members were employees of Pepperidge Farm, which is expressly denied, the conduct by Pepperidge Farm alleged by Plaintiff was in good faith conformity with and/or in reliance on an administrative regulation, order, ruling, approval, interpretation, and/or administrative practice.

10.     The claims of Plaintiff and/or the claims of the putative class members are barred, in whole or in part, because Plaintiff and/or the putative class members have already received all compensation due under applicable state law.

11.     To the extent the Complaint seeks equitable relief, Plaintiff and/or putative class members are not entitled to equitable relief, insofar as they have an adequate remedy at law.

12.     The claims of Plaintiff and/or the claims of the putative class members are barred, in whole or in part, to the extent there was no agreement between Pepperidge Farm and Plaintiff and/or the putative class members whereby Pepperidge Farm agreed to pay Plaintiff and/or the putative class members the monies they seek in this litigation.

13.     If any damages have been sustained by Plaintiffs and/or the putative class members, which is denied, Pepperidge Farm is entitled to offset all payments or benefits made to Plaintiffs and/or the putative class members, as well as all obligations of Plaintiffs and/or the putative class members owed to Pepperidge Farm, against any award that may be entered against Pepperidge Farm.

14.     The claims of Plaintiff and/or the claims of the putative class members are barred, in whole or in part, because Plaintiff and/or the putative class members were at all relevant times not covered by NJWPL because Plaintiff and/or the putative class members are not employees of Pepperidge Farm.

15.     Plaintiff failed to allege facts sufficient to support an award of liquidated damages against Pepperidge Farm.

16.     The claims of Plaintiff and/or the claims of some or all of the putative class members are barred in whole or in part because the Complaint is uncertain in that the purported class definitions are vague, ambiguous, and conclusory.

17.     The claims of Plaintiff cannot and should not be maintained on a class basis because the claims fail to meet the necessary requirements for certification, including, but not limited to numerosity, commonality, typicality, adequacy, predominance, and superiority.

18.     Certain interests of certain putative class members conflict with certain interests of Plaintiff and certain other putative class members.

19.     To the extent Plaintiff and/or some or all of the putative class members seek benefits, those claims are barred, in whole or in part, because the plan language governing some or all of the benefits sought makes clear that such plans do not apply to individuals who are classified as independent contractors, even if it is later determined by a court of law that the individuals were employees as a matter of law.

20.     The claims of Plaintiff and/or the claims of some or all of the putative class members are barred, in whole or in part, because Plaintiff and/or the putative class members have not appropriately or adequately mitigated their damages, if any.

21.     The claims of some or all of the putative class members are barred to the extent that they are subject to mandatory dispute resolution and arbitration.

22.     Without waiving its ability to oppose Federal Rule of Civil Procedure 23 class certification and expressly asserting its opposition to the propriety of class treatment, if the Court does certify a class in this case over Pepperidge Farm's objections, Pepperidge Farm asserts all defenses set forth above against each and every member of the certified class.

**WHEREFORE**, Pepperidge Farm respectfully submits that the claims asserted against it in the Complaint should be dismissed, with prejudice, in their entirety and that Pepperidge Farm should be awarded its attorneys' fees and costs incurred in defending this action as well as such other and further relief as the Court may deem just and proper.  As set forth in Pepperidge

Farm's Counterclaim, this includes, but is not limited to, in the event of a finding that Plaintiff, or any putative class member, was an employee of Pepperidge Farm:  offsetting any awards to Plaintiff or putative class members by the payments and other benefits received from Plaintiff's or putative class members' Consignment Agreements and independent contractor status; voiding their Consignment Agreements by virtue of the violation of the Agreements' essential terms and for voiding the Consignment Agreements' essential purpose; and awarding Pepperidge Farm all rights and remedies available in law and equity resulting from the Consignment Agreements being null and void.

## **RESERVATION OF RIGHTS**

Pepperidge Farm reserves the right to amend its Answer and Separate Defenses, including its responses to the allegations of the Complaint, and to add any and all additional defenses as they become known through discovery or investigation.

## COUNTERCLAIM

Counterclaim-Plaintiff Pepperidge Farm, Incorporated ("Pepperidge Farm") hereby asserts this Counterclaim against Counterclaim-Defendant Coleman McMillan ("McMillan"). Pepperidge Farm incorporates by reference all of the defined terms as set forth in its Answer and Separate Defenses to the Complaint, *supra*.

### Parties

1.      Pepperidge Farm is a corporation organized under the laws of the State of Connecticut, with its principal place of business at 595 Westport Avenue, Norwalk, CT 06851.

2.      McMillan is an individual who, on information and belief, resides in Staten Island, New York and who alleges that he signed and performed (and still performs) work pursuant to a Consignment Agreement with Pepperidge Farm.  Such Consignment Agreement is attached hereto as Exhibit ("Ex.") A and is incorporated into this Counterclaim as though fully set forth herein.

### Jurisdiction and Venue

3.      This Court has original subject matter-jurisdiction over this Counterclaim under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.  *See* Compl. ¶¶ 1-2 (stating that McMillan resides in New York and that Pepperidge Farm is a Connecticut corporation with its principal place of business in Connecticut).  This Court also has supplemental subject matter jurisdiction over this Counterclaim because it arises out of the same transaction or occurrence and is so related to the other claims in this action (over which this Court has diversity jurisdiction) that it forms part of the same case or controversy under Article III of the United States Constitution. Specifically, the claims and Counterclaim in this action all concern the relationship between Pepperidge Farm and McMillan.

4.      Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1441(a) because the United States District Court for the District of New Jersey is the federal judicial district and division embracing the Superior Court of New Jersey, Passaic County, where McMillan originally filed this action, and a substantial part of the alleged events giving rise to McMillan's claims are alleged to have occurred in this judicial district.

**Facts**

5.      Since October 2018, McMillan has been the President of Nobody Owns Me, LLC ("Nobody Owns Me"), which has been party to a commercial agreement with Pepperidge Farm (the "Consignment Agreement") (Ex. A), that set forth the parties' mutual agreement that McMillan was an independent contractor and would provide services under such contracts.

6.      The Consignment Agreement confers on Nobody Owns Me certain exclusive rights to distribute certain of Pepperidge Farm's products in a specific geographic territory.  Pursuant to the Consignment Agreement, Nobody Owns Me may order and receive products from Pepperidge Farm on consignment, thereafter distribute such products to certain customers located within that geographic territory, and receive a commission from those sales.

7.      Paragraph 15 of the Consignment Agreement provides:

Consignee[2] is a self-employed independent contractor, not an agent or employee of [Pepperidge Farm] . . . and Consignee will refrain from any conduct inconsistent with the terms of this Paragraph 15.  Consignee may, at Consignee's own expense and risk, employ such persons as Consignee shall deem appropriate to assist in the performance of Consignee's obligations under this Agreement; and Consignee shall be responsible for the hiring, firing, training and supervision of, and all remuneration and benefits for, any person so employed. The independent contractor relationship between [Pepperidge Farm] and Consignee is an essential element of this Agreement.  The discount percentage and commission rate described in Paragraph 3 and the percentages established pursuant to Schedule B or any similar schedule under this Agreement are based in substantial part on such independent contractor relationship and the understanding that [Pepperidge Farm] is

---

[2]      "Consignee" is defined in the Consignment Agreement as Nobody Owns Me.

not obligated to pay any FICA, income or similar tax or withholding for or on behalf of the Consignee.

*See* Ex. A ¶ 15.

8.      The Consignment Agreement confers on Nobody Owns Me the right to receive twenty percent commissions from the sales of the products that it takes on consignment from Pepperidge Farm, subject to the terms and conditions of the Consignment Agreement:

> For the performance of its services of solicitation and delivery under this subparagraph (b), Consignee, if it shall have made prompt and timely delivery of all charge tickets as required by subparagraph (d) (2), shall be paid a percentage of net proceeds payable to [Pepperidge Farm] by the direct billing customers, such percentage to be calculated at the rate specified in Schedule B [which is 20%].

*See* Ex. A, ¶ 3(b) and Schedule B.

9.      As a result of his status as an independent contractor, McMillan enjoys the right to set his own schedule, hours worked, and sequence of performing work; to determine when breaks are taken; to decide which vehicles and equipment are utilized for his distributorship; to decide whether to use employees or helpers on his distributorship, whom to use, and how and when to use them; and to dictate other details of performance of his work.

10.     As a result of his status as an independent contractor, McMillan enjoys the right to engage in any other businesses or professions, including, but not limited to, holding part-time or full-time employment with other entities or distributing products for other entities.

11.     Further, under the Consignment Agreement and as a result of his status as an independent contractor, McMillan, as President of Nobody Owns Me, has the right to sell all or parts of Nobody Owns Me's distribution rights and retain the net proceeds from such sales.  Indeed, in August 2021, Nobody Owns Me sold its rights to distribute to club stores within its territory to Pepperidge Farm for total consideration of $194,082.53.  *See* Ex. B.

12.    As a result of his status as an independent contractor, McMillan has deducted (or has had the opportunity to deduct) on its state and federal tax returns tens of thousands of dollars of expenses associated with running Nobody Owns Me.

13.    If McMillan had been an employee of Pepperidge Farm, which he is not, he would not have enjoyed many of the rights and benefits set forth above, including, but not limited to, retaining the commissions from the products that he distributes; setting his own schedule, hours worked, and sequence of performing work; determining when breaks are taken; deciding which vehicles and equipment are utilized on his distributorship; deciding whether to use employees or helpers for his distributorship, whom to use, and how and when to use them; dictating other details of performance of his work; taking tax deductions for the costs of operating his business; and having the right to engage in other businesses and professions and to sell all or parts of his distribution rights and retain the net proceeds from such sales.

14.    By his actions, including, but not limited to, his retention of the revenue generated from his independent contractor businesses, McMillan acknowledged and agreed to the arrangement outlined in the Consignment Agreement.

15.    On or about December 28, 2021, McMillan filed a Complaint with putative class action claims alleging that, notwithstanding the terms of his Consignment Agreement and the substantial monetary and other benefits he has enjoyed therefrom, he was treated by Pepperidge Farm as an employee rather than as an independent contractor and that he performed work for Pepperidge Farm under the Consignment Agreement.  *See* Compl. ¶ 9.

16.    Through the lawsuit, McMillan seeks additional money (on top of what he has already received pursuant to Nobody Owns Me's Consignment Agreement and the sale of distribution rights) in the form of "reimbursement" of "improper pay deductions, fees, charges,

and/or other out-of-pocket expenditures" and "liquidated damages."  Compl. ¶ 43; Prayer for Relief.

## COUNT ONE: UNJUST ENRICHMENT
### (Against Counterclaim-Defendant McMillan)

17.     All previous paragraphs are incorporated as though fully set forth herein.

18.     McMillan is or was enriched as a result of his status as an independent contractor, including, but not limited to, by:  retaining revenue from the products that he distributes; setting his own schedule, hours worked, and sequence of performing work; determining when breaks are taken, which vehicles and equipment are utilized on his distributorship; deciding whether and which employees or helpers to use for his distributorship, and how and when to use such employees and helpers; dictating other details of performance of his work; taking tax deductions for the costs of operating his business; having the right to engage in other businesses and professions and to sell all or parts of his distribution rights and retain the net proceeds from such sales; and selling part of his distribution rights and retaining the net proceeds from that sale.

19.     McMillan is or was enriched at Pepperidge Farm's expense because, pursuant to the financial arrangement defined in the Consignment Agreement, Nobody Owns Me received "a percentage of net proceeds payable to [Pepperidge Farm] by the direct billing customers."  Absent McMillan status as an independent contractor and the enforceability of the Consignment Agreement, Pepperidge Farm would have retained the rights to all of the revenue from such customers and would have retained the other rights and benefits afforded to McMillan as an independent contractor.

20.     As a condition of retaining the benefits received pursuant to Nobody Owns Me's Consignment Agreement, McMillan agreed that he was an independent contractor, was not entitled to wages and would pay the expenses associated with operating his business.

21.    The Court should find that McMillan was properly classified as an independent contractor and that he was not an employee of Pepperidge Farm.  In the alternative, if the Court concludes that McMillan should have been classified as an employee of Pepperidge Farm, it should then conclude that Nobody Owns Me's Consignment Agreement is void, that McMillan/Nobody Owns me entered into the Consignment Agreement in bad faith, and/or that McMillan was not governed by the terms of the Consignment Agreement.  Upon such a finding, any award(s) to McMillan of some or all of the relief sought in the Complaint would unjustly enrich McMillant at Pepperidge Farm's expense.  Specifically, McMillan would be unjustly enriched by receiving damages for wages available to employees and recovering deductions that an independent contractor may not recover while still retaining all of the earnings and benefits received and enjoyed as a result of his status as independent contractor which, if not for McMillan's independent contractor status, Pepperidge Farm would have reserved for itself.

22.    If the Court finds McMillan should have been classified as an employee of Pepperidge Farm (which it should not) and, pursuant to this finding, awards him some or all of the relief sought in the Complaint (which it should not), equity and good conscience require that Pepperidge Farm be awarded the value of earnings associated with McMillan's independent contractor status in order to offset any award of damages, penalties, liquidated damages, punitive damages, interest, and any other liabilities to which McMillan may be entitled to as a purported employee. The value of such earnings include, but is not limited to, (1) revenue Nobody Owns Me generated through the sale of the products distributed on consignment from Pepperidge Farm; (2) revenue Nobody Owns Me generated as a result of enjoying certain exclusive rights to distribute Pepperidge Farm products; (3) net proceeds that McMillan retained through the sale of all or parts of Nobody Owns Me distribution rights; (4) compensation received as a result of having

the ability to engage other businesses and professions and/or hold part-time or full-time employment while operating under the Consignment Agreement; and (5) revenue McMillan or Nobody Owns Me retained as a result of tax deductions he was entitled to take solely because he claimed that he was an independent contractors and not an employee.

## PRAYER FOR RELIEF

**WHEREFORE**, Pepperidge Farm respectfully requests judgment on its Counterclaim as follows:

1. In the event that the Court finds McMillan should have been classified as an employee of Pepperidge Farm (which it should not) and, pursuant to this finding, awards him some or all of the relief sought in the Complaint (which it should not), (i) a declaratory order stating that Nobody Owns Me's Consignment Agreement is null and void and (ii) an award of damages against McMillan including (but not limited to) any revenue, profits, or earnings retained from the products distributed and/or any revenue, profits, or earnings that McMillan retained by virtue of his status as independent contractor that exceeds any award of damages to which McMillan may be entitled if the Court deems him to be an employee;

2. An award of its attorneys' fees and costs;

3. Any other such relief as the Court may deem just and proper.

Dated:  July 21, 2022     Respectfully submitted,
            MORGAN, LEWIS & BOCKIUS LLP

            */s/ Ann Marie Effingham*
            Ann Marie Effingham (209642016)
            502 Carnegie Center
            Princeton, New Jersey 08540-7814
            annmarie.effingham@morganlewis.com
            Phone: (609) 919-6600

            Benjamin K. Jacobs (admitted *pro hac vice*)
            Jeffrey Becker (admitted *pro hac vice*)
            1701 Market Street
            Philadelphia, PA 19103
            benjamin.jacobs@morganlewis.com
            jeffrey.becker@morganlewis.com
            Phone: (215) 963-5651
            Phone: (215) 943-5946

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of July 2022, a true and correct copy of the

foregoing was served on all counsel of record via ECF.

<u>*/s/ Ann Marie Effingham*</u>
Ann Marie Effingham